# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**JOHN BOSTICK,**

    **Plaintiff,**

v.                                               Case No.  8:13-cv-1319-T-30TGW

**CBOCS, Inc., a corporation doing business
as Cracker Barrel Old Country Store &
Restaurant,**

    **Defendant.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment (Dkt. 26), Plaintiff's Response in Opposition (Dkt. 31), and Defendant's Reply (Dkt. 35).  The Court, having reviewed the motion, response, reply, record evidence, and being otherwise advised in the premises, concludes that the motion should be granted and final judgment entered in Defendant's favor.

## BACKGROUND

Plaintiff John Bostick is a gay male and former employee of Defendant Cracker Barrel Old Country Store & Restaurant ("Cracker Barrel").  After his discharge from Cracker Barrel, Bostick filed the instant employment action, alleging "unlawful employment practices on the basis of sexual orientation discrimination, harassment and retaliation."  (Dkt. 1). Specifically, Bostick alleges a claim of sexual harassment under Title VII (Count I) and retaliation under the Florida Civil Rights Act ("FCRA").

Bostick's employment at Cracker Barrel began in September 2008, and ended, with his termination, on May 27, 2011. His position was Associate Manager in Training. Bostick was initially placed at the Anderson, South Carolina store. During his time at the South Carolina store, Bostick completed all but one module of his training program. Bostick's performance at the South Carolina store was satisfactory. Bostick stated during his deposition that his supervisor at the Anderson store was aware of Bostick's sexual orientation and Bostick never felt discriminated against in any fashion.

In February 2011, Bostick was transferred to a Bradenton, Florida store based on his request to be transferred to a store that was "anywhere south." Bostick's position remained Associate Manager in Training. During the relevant time, Tim Keesler was the General Manager at the Bradenton store and Paul Ancona was the District Manager. Keesler and Ancona were aware of Bostick's sexual orientation because Bostick talked about his partner when he discussed his transfer to Florida with Keesler and Ancona. Bostick acknowledged that Keesler and Ancona offered him the Bradenton position being fully aware of Bostick's sexual orientation.

According to Bostick, at some point during his time at the Bradenton store, he asked Keesler when he could begin his final training module. Keesler's response was that Matt Donohue, an Associate General Manager at the same store, would go before Bostick because Donohue had a family to support and had worked longer for Keesler. Bostick acknowledged during his deposition that Donohue had been working for Keesler for a longer period of time.

At the Bradenton store, Bostick's areas of responsibility ("AOR") were supplies/maintenance, including the processing of invoices. Bostick received four Employee Counseling Reports (completed by Keesler) based on his failure to adequately perform his areas of responsibility. The first Employee Counseling Report, dated March 15, 2011, noted the following "Problem/Situation":

> On 3-15-11 John Bostick had a conversation with myself and Paul Ancona my District Manager. We were talking about John's AOR, Supples/Maintenance. Not only had we missed Februarys [sic] results because two PFG invoices were not accounted for, but we had also ran [sic] out of numerous products, ie: CRAYONS, SOLID POWER, RINSE AIDE, EARPIECES, PAPER TOWELS, FRUIT DISHES, PLATTERS, SILVERWARE, ETC. John admitted fault and took responsibility.

(Plaintiff's Deposition, Ex. 23 thereto). The Report noted that "John stated this wouldn't happen again." *Id.*

Bostick acknowledged during his deposition that he did not initially understand the Bradenton store's invoicing process; the process differed from the Anderson store. Bostick also acknowledged that he admitted to Keesler that they had run out of the products referenced in the Report and that Bostick was responsible as the manager in charge of supplies. Other than the comment about unaccounted invoices, which Bostick attributed to Donohue, Bostick stated that he agreed with this Employee Counseling Report.

The second Employee Counseling Report, dated March 25, 2011, noted that on March 24, 2011: "There were 24 outstanding bills in the invoice box unopened. Because these bills were not accounted for, we will now miss both our supply budget and our maintenance

budget for two months in a row." It further noted that: "John admitted fault and took responsibility Its [sic] now 3-25-11 and I'm having the same conversation with John. Nothing was organized by John nor updated, and no bills were copied [sic], so there is no way to reconcile what had been paid. After explaining this to John, He Admitted fault and took responsibility. He stated it would never happen again." (Plaintiff's deposition, Ex. 24 thereto).

During his deposition, Bostick admitted that he had not organized the supply room because he had been running the restaurant. He also stated that it was possible that he admitted fault because he was working in a new store and there was a "training curve." (Plaintiff's deposition at 104:4-8). Bostick testified that he told Keesler he was still learning their processes and there would be improvement moving forward. Bostick also stated that he believed he was being singled out by Keesler: "Because I'm a gay manager." *Id.* at 108:1-4.

Subsequently, Bostick mailed a letter to Keesler, dated April 19, 2011, that discussed Bostick's concerns with "discriminatory remarks and actions." The letter noted that remarks being made such as "...you're just a pretty boy!", "...tell your buddies, 'cause that's what you call each other, to visit you somewhere else. This is a family operation!" and "...he's afraid he'll get AIDS from you" were "deeply offensive to [Bostick], very inflammatory and troubling." Bostick stated that it was his hope that "a resolution to this matter [could] be obtained amicably and without the need for intervention" and that he was "prepared to contact Employee Relations should this type of behavior continue." (Plaintiff's deposition,

Ex. 25 thereto). According to Bostick, although he and Keesler discussed the letter, Keesler did not take any action in response to the April 19, 2011 letter.

During his deposition, Bostick described four comments that were directed at him that prompted him to write the April 19, 2011 letter. Three of the comments were made by Donohue and one of the comments was made by Keesler. The remarks form the basis of Bostick's hostile work environment claim and are as follows:

1. Bostick was buying candies, a card, and a stuffed animal and Donohue stated, "Oh. Buying candies for your boyfriend. How sweet." Bostick told Keesler about the incident and Keesler responded that Donohue was "just playing" but that Keesler would talk to Donohue about his comment;

2. Keesler told Bostick that he was "[p]arading and prissing around like [he's] better than anyone else";

3. Bostick was interacting with a table of four male guests and one of them hugged Bostick. Donohue stated, "Tell your buddies - because that's what you call each other - to visit you somewhere else. This is a family operation." Keesler was present during the comment and Bostick told Keesler how offended he was by the comment; and

4. Bostick received a guest complaint and offered to redo the food and the guest declined and said he was afraid the kitchen would do something to his food. Bostick relayed the story to Donohue and Donohue told Bostick in front of staff that "[the guest is] probably afraid he'll catch AIDS from you." Bostick told Keesler about the comment and Keesler said that they would talk about it.

On April 26, 2011, Bostick received a third Employee Counseling Report that was labeled "Final Written." The Report noted that since Bostick "arrived on 2/12/11 there have been numerous issues with [his] performance." The Report described "[s]erious under performance in [Bostick's] AOR of supplies" that forced the store to transfer product from

other stores because of "run outs" and noted a total of sixteen dates when this occurred. The Report also referenced Bostick's two prior Employee Counseling Reports and stated that Bostick had received "at least 8 verbal warnings from the GM and 3 from your DM regarding these issues." The Report stated that "[i]n the month of March you failed to process approx. 30 invoices totaling $10,000 which will force a rollover into Aprils [sic] ledger." The Report also described a guest complaint involving Bostick touching guests in an inappropriate manner. The Report placed Bostick on final written notice and stated: "If there is [sic] any further issues with your performance in the future your employment with Cracker Barrel will be terminated effective immediately." The Report was signed by Keesler, Bostick, and witnessed by Ancona. (Plaintiff's deposition, Ex. 26 thereto).

In late April or early May of 2011, Bostick contacted Tyson Smith, an employee in Cracker Barrel's employee relations department, and informed Smith that Bostick believed he was being harassed and discriminated against by Keesler and Ancona. According to Bostick, he did not hear anything further from Smith about his complaints.

According to Cracker Barrel, Bostick's performance did not improve. Accordingly, on May 27, 2011, Bostick received his fourth Employee Counseling Report; the Report noted that Bostick was terminated. The Report stated:

> The purpose of this documentation is to notify you of your behaviors. Your inability to follow specific instructions and lack of leadership is concerning. You were documented on 3-15-11, 3-25-11, and 4-26-11 because of your lack of performance specifically with your orders. We had to transfer product from other stores due to these mistakes on 5-1-11, 5-3-11, 5-4-11, 5-10-11, and 5-19-11. This type of behavior and lack of attention to detail could jeopardize the success of our restaurant.

(Plaintiff's deposition, Ex. 27 thereto).

According to Bostick, the four comments described above created a hostile work environment. Bostick also believes that Keesler unfairly counseled him and ultimately terminated him because of Bostick's sexual orientation and Bostick's complaints that he was being harassed based on his sexual orientation.

During his deposition, Bostick repeatedly stated that the harassing comments and the adverse actions taken against him at the Bradenton store were based *solely* on Bostick's sexual orientation, that is, based on the fact that Bostick is a gay male.

Cracker Barrel now moves for summary judgment on Bostick's sexual harassment claim and retaliation claim because claims of harassment and retaliation premised on an employee's sexual orientation are not cognizable under Title VII and the FCRA. Cracker Barrel also argues that the claims fail on the merits. The Court agrees.

## **SUMMARY JUDGMENT STANDARD**

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248

(1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *See id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *See id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *See Celotex,* 477 U.S. at 324. The evidence must be significantly probative to support the claims. *See Anderson,* 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *See Fernandez v. Bankers Nat'l Life Ins. Co.,* 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson,* 477 U.S. at 248; *Hoffman v. Allied Corp.,* 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *See Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

**DISCUSSION**

**I.    Bostick's Claims Are Clearly Based on Sexual Orientation and Fail as a Matter of Law**

Although the Supreme Court and the Eleventh Circuit have not specifically addressed this issue, courts in this circuit and across the country have consistently held that Title VII does not apply to discrimination claims based on sexual orientation.[1]  *See, e.g., Anderson v. Napolitano,* No. 09-60744-CIV, 2010 WL 431898, at *4 (S.D. Fla. Feb. 8, 2010) ("The law is clear that Title VII does not prohibit discrimination based on sexual orientation."); *Mowery v. Escambia Cnty. Utils. Auth.,* No. 3:04CV382-RSEMT, 2006 WL 327965, at *9 (N.D. Fla. Feb. 10, 2006) ("[C]ase law throughout the circuits consistently holds that Title VII provides no protection for discrimination based on sexual orientation."); *Hudson v. Norfolk S. Ry. Co.,* 209 F. Supp. 2d 1301, 1315 (N.D. Ga. 2001) (explaining that "sexual orientation is not a classification protected under Title VII").

For example, in *Simonton v. Runyon,* 232 F.3d 33, 36 (2d Cir. 2000), the Second Circuit examined the language and history of Title VII and determined that the statute "does not proscribe discrimination because of sexual orientation."  The court recognized that the plaintiff suffered "appalling persecution" because of his sexual orientation, but nonetheless held that he could not state a claim under Title VII.  *See id.* at 35.

---

[1] Notably, decisions construing Title VII are applicable to claims under the FCRA because the Florida statute was patterned after Title VII.  *See Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998).

The record is undisputed that Bostick's claims asserted in this care are premised *solely* on his sexual orientation. Indeed, during his deposition, Bostick testified countless times that his claims were based on his sexual orientation. For example, Bostick testified as follows:

> Q   So I understand the basis of this article and what you were complaining about, were you saying to her that Cracker Barrel was treating you improperly because of your sexual orientation?
> A   Yes, that's my belief.
> Q   That they treated you improperly because of your sexual orientation?
> A   Yes.
> Q   What is your sexual orientation, sir?
> A   I'm gay.

(Plaintiff's deposition at 29:16-25).

> Q   - were these [statements] based upon your sexual orientation?
> A   Yes.
> Q   Were they based upon anything else?
> A   Not to my knowledge, no.

*Id.* at 84:9-13.

> Q   You believe all that behavior was based upon your sexual orientation?
> A   I do.
> Q   Do you believe it was being based upon anything else?
> A   No.
> Q   Based on your race?
> A   No.
> Q   Your religion?
> A   No.
> Q   National origin?
> A   No.
> Q   Your gender?
> A   Gender that I'm a male who happens to be a confident, openly gay man. I guess you could work that in there.

>   . . .
>
>   Q   I want to understand what your point of view is.  So you said their illegal behavior was based upon your sexual orientation?
>   A   Yes, I did.

*Id.* at 86-88.

>   Q   In your opinion, the harassment and discrimination was based upon your sexual orientation?
>   A   In my opinion, yes.
>   Q   Was it based upon your race?
>   A   No.
>   Q   Your national origin?
>   A   No.
>   . . .
>   Q   The fact that you are a male?
>   A   No.
>   Q   Your sexual orientation is the sole reason and your complaints of sexual orientation?
>   A   Yes.

*Id.* at 128-29.

In sum, the record could not be any clearer that Bostick's claims in this case are based on his sexual orientation.  Accordingly, Cracker Barrel is entitled to summary judgment on Bostick's claims.[2]

---

[2] Notably, Because the law is clear that harassment based on sexual orientation is not prohibited by Title VII, Bostick's retaliation claim would also fail as a matter of law because Bostick could not have held an objectively reasonable belief that the conduct he complained of was unlawful. *See Espinosa v. Burger King Corp.*, 2012 WL 4344323, at *8 (S.D. Fla. Sep. 21, 2012) (discussing same).

## II. Even if Bostick's Claims Were Based on His Sex or Gender, They Fail as a Matter of Law

In tacit agreement that Bostick's claims based on sexual orientation fail as a matter of law, Bostick's summary judgment response ignores his sexual orientation claims and places an interpretive "spin" on the alleged harassment and retaliation claims, classifying the claims as being based on sex or gender rather than on sexual orientation. This new theory essentially argues that the comments are based on Bostick's sex because they would not have been made if he were not male.

The Court denies this interpretive spin for two reasons. First, Bostick did not assert any claim based on his sex or gender in this case until his response to Cracker Barrel's summary judgment motion. Accordingly, any such claim has been waived and the Court will not permit Bostick to amend his complaint at this late stage, in response to a meritorious summary judgment motion.

Second, even if the Court permitted Bostick to proceed with these newly morphed claims, they fail on the merits. The record is clear that Bostick himself believed that the comments made by Donohue and Keesler related to his sexual orientation. Also, the comments on their face relate to Bostick's sexual orientation. The gender stereotype associated with being a man is masculinity. Bostick does not allege, nor can an inference be properly drawn based on the record, that Bostick's co-workers perceived Bostick as being feminine rather than masculine.

In sum, the record is clear that Bostick is not bringing a case based on having been harassed and retaliated against because others perceived him to be homosexual and therefore not adequately masculine. Instead, he alleges he is a gay man who was discriminated and retaliated against based on sexual stereotyping. Bostick's response seems to imply that all gay men fail to comply with male stereotypes simply because they are gay. However, that would mean "that every case of sexual orientation discrimination [would] translate into a triable case of gender stereotyping discrimination, which would contradict Congress's decision not to make sexual orientation discrimination cognizable under Title VII." *Anderson v. Napolitano*, 2010 WL 431898, at *6-*7 (S.D. Fla. Feb. 8, 2010) (quoting *Prowel v. Wise Business Forms, Inc.,* 579 F.3d 285, 292 (3d Cir. 2009)).

In sum, even if the Court entertained a sex discrimination claim and retaliation claim based on gender stereotyping, Bostick has not presented sufficient allegations or evidence to support these claims. Accordingly, Cracker Barrel would still be entitled to summary judgment on the entirety of Bostick's complaint as a matter of law.

### III. Bostick's Hostile Work Environment Claim Would Also Fail Because the Environment Was Not Sufficiently Severe and Pervasive

In a hostile work environment case, "the plaintiff must show that the work environment was so pervaded by discrimination that the terms and conditions of employment were altered." *Vance v. Ball State Univ.,* 133 S.Ct. 2434, 2441 (2013) (citations omitted). As Cracker Barrel points out, Bostick does not come close to establishing a hostile or abusive work environment based on the four comments/statements that were made to him. These

four sporadic comments are woefully insufficient to establish a hostile environment. *See Mendoza v. Borden*, 195 F.3d 1238, 1246-47 (11th Cir. 1999) (citing numerous examples where conduct failed to reach the high threshold of severity and pervasiveness). Accordingly, the hostile work environment claim fails on the merits as a matter of law.

**IV.    Bostick's Retaliation Claim Would Also Fail Because Bostick Cannot Establish Pretext**

Bostick's response argues that Cracker Barrel retaliated against him by terminating him after Bostick complained about the comments and statements that were made about his sexual orientation. Even assuming such a claim is viable, it fails on the merits.

Once a plaintiff has made a *prima facie* case of retaliation, "the burden of production shifts to the defendant to rebut the presumption by articulating a legitimate, non-discriminatory reason for the adverse employment action." *Brown v. Alabama Dept. Of Transp.,* 597 F.3d 1160, 1181 (11th Cir. 2010). If the defendant is able to successfully rebut the presumption of retaliation, then the burden shifts back to the plaintiff to show that the defendant's purported reasons are a mere pretext for retaliation. *See id.* at 1181-82.

Even if the Court assumes, for the sake of argument, that Bostick can establish a *prima facie* case of retaliation, the record reflects that Cracker Barrel had a legitimate and non-retaliatory basis for Bostick's termination; Bostick was terminated because of his consistently poor performance.

Bostick does not point to sufficient evidence of pretext. Bostick admitted during his deposition that portions of the Employee Counseling Reports were truthful. To the extent

that Bostick disagreed with the Reports and the basis behind his termination, Bostick does not point to anything specific that was incorrect or false, other than Bostick's belief that the Reports and his termination were premised on his sexual orientation. Bostick's own evaluations and opinions about his ultimate termination are insufficient to establish pretext. *See Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1332-33 (11th Cir. 1998); *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997).

In conclusion, it is important to note that the Eleventh Circuit stresses the following on pretext:

> Title VII does not require the employer's needs and expectations to be objectively reasonable; it simply prohibits the employer from discriminating on the basis of membership in a protected class. We do not sit as a "super-personnel department," and it is not our role to second-guess the wisdom of an employer's business decisions-indeed the wisdom of them is irrelevant-as long as those decisions were not made with a discriminatory motive. *Chapman*, 229 F.3d at 1030. That is true "[n]o matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers." *Id.* (quotation marks and citations omitted); *see also Nix v. WLCY Radio/Rahall Commc'ns,* 738 F.2d 1181, 1187 (11th Cir. 1984) ("[An] employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."); *Wallace v. SMC Pneumatics, Inc.,* 103 F.3d 1394, 1399 (7th Cir. 1997) (listing, among "embarrassing" but non-actionable reasons under Title VII, "nepotism, personal friendship, the plaintiff's being a perceived threat to his superior, a mistaken evaluation, the plaintiff's being a whistleblower, the employer's antipathy to irrelevant but not statutorily protected personal characteristics, a superior officer's desire to shift blame to a hapless subordinate ... or even an invidious factor but not one outlawed by the statute under which the plaintiff is suing; ... or there might be no reason").

*Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1266-67 (11th Cir. 2010).

Accordingly, the retaliation claim fails as a matter of law on the merits.

It is therefore ORDERED AND ADJUDGED that:

1. Defendant's Motion for Summary Judgment (Dkt. 26) is granted.

2. The Clerk of Court is directed to enter final judgment in favor of Defendant and against Plaintiff and thereafter shall close this case and terminate any pending motions as moot.

**DONE** and **ORDERED** in Tampa, Florida on August 1, 2014.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2013\13-cv-1319.msj-grant-sex.orientation.frm